Because of confidentiality, and we're going to allow all the parties to file a post-argument letter brief, hopefully in the order of five pages, providing any further confidential information that relates to the oral argument that would be useful to the panel. And I guess perhaps you should do that within a week following the oral argument. Are there any questions about this procedure? Your Honor, if I may? Yeah. Is the transcript of the hearing going to be released online immediately? Because if possible, we respectfully request an opportunity in the event of inadvertence for the parties to review and notify the Court within 24 hours of any potential problems that we may have. We'll give you 24 hours before we release it. Thank you, Your Honor. Okay, so the courtroom should be open now. All right. I think with Patrick, perhaps you can open the door. It's better when we wait. Excuse me. I'm trusting him. He's going to have five days open. Okay. Yeah. All right. Then let us proceed with the order of presentation as we have it. Mr. Colley, as appellant. You have pleased the Court. GAO's prediction that it would sustain Northrop's misleading discussion protest did not provide a rational basis for the agency's corrective action, both because Northrop failed to clarify a solicitation ambiguity and because Northrop has not demonstrated prejudice. This Court has established that when a competing contractor encounters an ambiguous agency communication, it must seek clarification. Excuse me. Can I ask? Yes. This is, I guess, a question that seems to me to run through the several arguments. It seems to me it's one thing to say when the GAO or the Court of Federal Claims and we would conclude that the government in awarding a contract and sticking with it must be reversed. And it's another thing, and there are various rules about waiver and when certain objections need to be made timely, but that we don't really have that. What we have here is a question of what the government may reasonably choose to do that we might not through a protest force the government to do. And it seems to me most of your arguments are about the forcing standards, not the permissive standards. Your Honor, the arguments that we're putting forward we believe is a forcing standard on the contractor at this point. The government, the question is what happens when this ambiguous statement appears in front of the contractor. The rule that this Court laid down in Statistica and Blue and Gold and Comments and others cases is that if that ambiguity is presented, the obligation lies on the contractor to bring it to the attention of the government in a timely way to fix the problem. On pain of not being able to win a protest that would undo the government decision. Correct. But that's not this context. We have a context in which, I mean, one way to put it might be the government has waived its right to invoke constructive acceptance or knowledge, which it can do, and therefore conclude on its own reasonably there was a problem here, we would like to correct it. In this particular instance, Your Honor, that's an interesting hypothetical, but it's not the situation that we encounter. In this case, the government defended its decision and did not intend to take corrective action and felt exactly as we maintain here. Until it was persuaded otherwise by the GAO lawyer. Actually, Your Honor, the Court of Federal Claims below recognized as a matter of fact that the agency took the corrective action regardless of whether GAO was right or wrong. It took the corrective action because the GAO said we are going to sustain these two protest grounds. And the government said, okay, we don't want to have a protest sustained, so we will take corrective action on those two protest issues. That's what the Court of Federal Claims understood from the only documentary evidence of the agency's decision. The agency's decision was announced in a letter to GAO that says, in accordance with what you just said, we'll take corrective action. There is no evidence anywhere of any independent assessment by the government that the government agreed that it had made a mistake that it needed to fix. It simply took corrective action based on what it was told by the GAO. Under Turner, the responsibility for the Court of Federal Claims and this Court today is to decide whether or not that statement from GAO provided a rational basis for the government to take that action. Well, in other words, whether the statement from GAO was correct or not. Not so much whether the statement from GAO was correct, Your Honor, because in our view, the statement from GAO didn't matter. That protest never should have been heard. I'm not understanding your answer. I thought your theory was that the GAO said we're going to sustain the protest and the government, under duress, agreed to re-bid the contract. And the question is whether the GAO tentative decision or whatever it is was rational. Yes. And the reason that it was not rational, Your Honor, is that that decision by the GAO was premised on the idea that Northrop's misleading discussion argument should have been taken forward. Okay. Well, let me ask you a question. I think you're right that under General's contract standards, if there were a mistake in the evaluation letter and nobody objected to it or said anything about it, that the failure under the blue and gold case to raise it at the time would foreclose raising it later as an objection to the award. So let's assume that. But it seems to me that we have here a somewhat different situation where the government has told one of the bidders that it made a mistake in the evaluation notice with respect to research and development costs, but it didn't tell another bidder, that is Northrop, the same thing. And that seems to me potentially quite different from the usual blue and gold situation, and particularly in the light of the FAR provision about treating everybody equally. Your Honor, I would submit that there is no reason to create a different rule just because the agency didn't correct the mistake. Northrop claims that it was deterred from relying on IRB. Because it did correct the mistake. Well, but it didn't correct the mistake with Northrop. Right. And Northrop claims that it was deterred from using IRB reliance because of this statement in EN. That was the problem. There wasn't a new or different problem that arose because the agency didn't correct the error. In fact, in blue and gold and Statistica, the error never gets corrected before the award is made, but the ability to bring the protest case is waived nevertheless. Why isn't there a legitimate concern under this FAR provision about equal treatment, about telling one bidder that they made a mistake and not telling another bidder that they made a mistake? Your Honor, I think that the FAR provision that you're referring to is one of a series of things that the government has to take into consideration as it decides how to shape its discussions going forward. In this case, we really see why that decision, that discretionary judgment, shouldn't be the basis for applying a different rule from Statistica. The government here knew about the Northrop pricing strategy. It's had communications with Northrop about it, and based on that dialogue, it understood what Northrop was doing. It understood Northrop's technical approach. This was the issue that we were talking about a moment before in the closed session, and as well as page 19 of our reply brief. That knowledge told the government something, and it had to make a decision about balancing the factors that are in the FAR about how to structure that discussion, including what it would do in terms of revealing information about another competitor's technical and pricing information. The government's decision was, we don't want to revisit IR&D at this point because of what do we know about Northrop's approach? They told people something that was wrong. And they told one bidder, the Raytheon, that they made a mistake, and they didn't tell another bidder, Northrop, about the mistake. What they did was apply the RFP language, which was, we're going to apply IR&D pursuant to the FAR. When Northrop was confronted with a statement that said, we're not going to follow the FAR, Northrop said nothing. The agency then had to decide whether or not, in its discussions, it was going to revisit the IR&D question with Northrop, and concluded that it should have, shouldn't. We can debate the agency's judgment about that, about whether or not it might have done something different. The question is, faced with the obligation to raise that ambiguity, does Northrop's failure preclude its ability to bring that protest, notwithstanding the subsequent conduct by the agency? We submit that that bright-line rule is already established by this court, produces efficiency in the world of procurement, and ought to be applied here. Let me come back to the question that Judge Toronto asked at the beginning, but let's narrow it down to the question of prejudice, because you argue that there needed to be a showing of prejudice in order to re-bid. I'm not sure I understand why that's the case, because if the government thinks it made a mistake and violated the FAR in treating people unequally, why does it have to find prejudice to re-bid the contract? Your Honor, this court has made clear that undertaking a, or disrupting a procurement decision like this requires not only a mistake, but some prejudice, some impact that makes it worthwhile. Well, to have a court order a re-bid, yes. Well, I would submit, Your Honor, that even when the government is going to completely blow up a procurement, to do it when there hasn't been any consequence would be an arbitrary and capricious action. Suppose the GAO had never been involved here. The government discovered its own mistake after the award, and it said, gee, we think we violated the FAR by not telling Northrop that we'd given erroneous information in the evaluation, and we think under those circumstances we should re-bid. And let's assume in this hypothetical that that's correct, that they did violate the FAR. Do they really have to find prejudice in order to order a re-bid under those circumstances? Your Honor, I think your question assumes prejudice. If they felt like this communication had not had any impact, then I don't know why it would be rational for them to take a dramatic step like re-bidding the contract. If it had a consequence, then they would take that step. But in this case, what we have is a situation not where the agency thought that it had done anything wrong. We have a situation where the GAO told them, go back and fix this procurement because we decide that you did something wrong. The government never found that there was any prejudice, and GAO never found any prejudice to validate a statement that says we're going to find that this protest should be sustained. Try to answer my hypothetical. In my hypothetical, could the government legitimately re-bid the contract because it violated the FAR without having made a finding of prejudice? I think if the government were to re-bid the entire contract after the proposals had gone in and been evaluated and an award made and the prices revealed in the kind of situation we're talking about, and then decided that, well, we're going to scrub that and start over, even though the mistake that they identified had no consequential impact, that might well be an arbitrary and capricious action. The idea that it had no impact is my point, and the court has said minimum errors in a procurement don't justify a remedy. I don't know that that changes just because the agency implements the remedy on its own rather than being forced to do so. Isn't there this question of impact and no impact is not either or. There is a range of probabilities or possibilities of impact and the prejudice standard that would apply in a protest challenge to sticking with the award. Why wouldn't that be higher than any standard that would make the government's voluntary decision to re-bid, my hypothesis here, rational? We can't be sure that there was no impact. There might well have been. Maybe not enough that we could be dinged if they sued us, but enough that it's reasonable for us to say, let's re-do this. Your Honor, I'm prepared to, hypothetically, there may come a point where the agency has made what this court and others might view as a rational judgment call based on its determination of what would be the appropriate thing to do. And I'm not going to debate that, frankly. I think that's a possibility. In this particular case, we don't have any of that. We don't have any statement by the agency finding that there was any, that it considered there to be any kind of... That seems to me to go back to this, the point that you've made several times about focusing just on what recorded determination before the GAO or right after the GAO got into this, as opposed to what the record would support that they are now asserting in this litigation. And that feels to me like a separate matter because of the timing here. Actually, I don't think there's a separate matter because the same prejudice record that we've been talking about in terms of what was articulated below and what's been articulated, whether at GAO or the Court of Federal Claims, the record doesn't support any prejudice finding. And we've reached that argument. Your Honor, I have a little less than two minutes left in my entire time, but I would simply say that we feel like that ambiguity was presented. Northrop did not. It is fundamentally unfair to have an outcome where Raytheon, who did the right thing, is penalized, and Northrop, who didn't live up to its obligation, did the wrong thing. Can I ask you a question before you sit down? We've talked really only about the first of the two identified grounds for not sticking with the award. If the first ground, the one that we've talked about, if the government's decision to re-bid is upheld, is the second issue still, is it a live issue as a technical mootness matter? Is it something that we still need to decide? Or could it be, should it, I don't know, that if the government is going to go through a re-bidding, they certainly can reasonably say, we're going to re-evaluate this one thing that we didn't evaluate quite enough the first time. Your Honor, we believe it remains a live issue because without a judge's direction from this court otherwise, the agency is going to be compelled to make a second award decision. We don't think that award decision was necessary because we don't think either of the two grounds that GAO identified provided a rational basis for an award decision. Yeah, but I think the hypothetical is that you lose on the first issue. And we hold that the government was correct in re-bidding this because of the error in disparate treatment. And with respect to the research and development costs, I think the question is if hypothetically, I know you don't like the hypothetical, but hypothetically if that's what we decide, why do we need to reach the second issue? Your Honor, the question really is whether or not the agency was right or wrong. I think he reached the issue to decide whether or not the agency's award decision is going to be based on its prior action or its future action. It may be that at this point, the agency has completed that part of the corrective action. If the corrective action goes forward on one issue, I'm not sure that it's going to matter a whole lot whether it goes on on the second one. Could I ask you on the second issue, one of the questions here is whether the requirement of substantiation required testing, right? Yes. And do you understand that that's the issue or does it go beyond that? Your Honor, we think that the only issue is what's in the solicitation required. Right. But is that limited to the question of whether testing is required or, for example, is there a question as to whether the evaluators looked at the revised proposal and sufficiently reached an opinion about the fact that it really didn't change much? Your Honor, based on the review of the court below, we don't think that there remains an issue about whether the evaluation was reasonable or correct in terms of whether or not they knew the information about the design change or whether or not they came to a reasonable judgment that the design change was still left the system at a TRL 6 level. So it's a testing issue. It's a question of testing or what other substantiation is required. Wait. When you go on to that second thing, I'm not sure what you're saying. I understand the question of whether substantiation requires testing, but I don't understand the second part of that. The only thing I did was take that substantiation and try to define it as broadly as you want. There's nothing in the solicitation that says what you have to present as substantiation, testing or anything else. Nothing was presented, right? What was presented was the testing and substantiation that had been accomplished in the prior procurement phase. And the issue was, was that substantiation enough? In the view of the evaluators, it was. And the solicitation says, you give us the substantiation, Mr. Offerer, that you think is appropriate, and then the RFP turns to the evaluators and says, you decide if it's enough. Here, Raytheon relied on the prior testing and analysis and gave that to the evaluators as the basis for the, to show the substantiation. The evaluators referred to the RFP and looked at that and said, we think that's enough. There was a reasonable approach and a reasonable finding based on a reasonable interpretation of the solicitation. There wasn't any basis for a corrective action. You're saying that at that stage, the issue really is, at what point do we defer to the evaluators? Yes, Your Honor, because the solicitation says, the substantiation comes in, whatever it's going to be. It doesn't define what's required. The role of deciding whether it was enough or not is left by the solicitation to the evaluators. Okay. Let's hear from the other side. We'll save you rebuttal time. Thank you, Your Honor. Okay. Mr. May. Thank you, Your Honor. May it please the Court. Just on that last point, is the government's position that substantiation requires testing? Yes, because you can't simply take the word substantiation, as Raytheon does, out of context. In much as the solicitation provides, the government will evaluate. The next question is, well, evaluate is ambiguous. Does that mean the government has complete discretion of what it will evaluate? No. You read further and you see that it will evaluate the office's proposed design solutions and determine the sub-factors are met based upon, and it goes through a list. Similarly, substantiation is followed by substantiation of at least a TRL level of six for all critical technology elements for the design solution that have changed. So it's incorporating the notion that a critical technology element has changed. It's also incorporating TRL six. And TRL six, as defined by the Department of Defense's guidance, requires testing. It requires that there will be operation that's shown to operate in the relevant environment. So when you define that critical technology element, as it does in the solicitation, as a module, if the government is not requiring, ultimately, substantiation of testing of that module, then you have a difficulty. I mean, one of the problems we have here is the government's focus was wrong, ultimately. It was looking about how things relate to other parts without focusing upon requirements of solicitation. It would be a rational focus, and we've contended this below the trial court, and we still maintain that absent the language of solicitation, absent Section M241, the government's action would have been rational. But unfortunately, there were requirements that were set in solicitation, and we needed to make certain that our evaluation complied. What is M241? What is that? What is M241? M241 is the section that talks about substantiation of at least, the government evaluating substantiation of at least a technology readiness level of six for all critical technology elements for the design solution of the change since the pre-EMD preliminary design. Okay, I understand. But I thought a minute ago you made some reference to another document other than the solicitation, which talked about testing. What document is that? And where did we find that in the record? That document is, I believe it said, A279 to 280 of the joint appendix. It is what is the DOD PLA guidance, and that is expressly incorporated into solicitation. It's referenced in Section L5A13, which is found at A358 of the solicitation. And that provides and defines what TRL 6 is, because TRL 6 does have a specific meaning. Where is the reference to testing here? It specifically talks about it requires the representative model or prototype be tested in the relevant environment. Where do I find it on the page? Is this on TRL 6? 270. 279 and number 6. Yes, there's a chart, and there's a TRL 6, if I believe correctly. The chart goes down to various levels of TRL. And one other thing to note about the TRL levels is it's a progressive step up. So, in other words, at TRL 6, you've met TRL 4. You've met TRL 5. You're now at TRL 6. And to be TRL 7, you will have met TRL 6. What is meant by when it says examples in blue? Well, it provides representative models. I'm sorry. What are you focused on? The next to the last line on 279 in the description column. Examples of sort of testing include testing a prototype. And we do actually have in this case, we have Demo C in which prior to having any changes, Northrop Grumman did test all the parties, tested a prototype of what they were going to offer to the government. So, we do actually have that. I understand. And then, of course, we have a change that occurs. And that change triggers the requirements for further testing data in this case. So, turning with regards to the unequal discussions point, as the trial court found, as a matter of fact, the agency engaged in misleading and unequal discussions. The issue isn't whether at the end of the day, Northrop had an obligation to raise a particular issue. It's about unequal discussions. This isn't a case about waiver. If the agency had applied the same rules to everyone, had not engaged in unequal treatment, there would be an argument that it was too late for Northrop Grumman to complain about things. If we had stuck with the evaluation plan, if no one was allowed to include IR&D within their proposals, then there would be no problem here. It would be too late for Northrop Grumman, but that's not the case here. Can I ask you, I guess, a version of the question that I began with on the other side? Is the question before us, which is to say, is the question that was before the Court of Federal Claims, the same question about whether there were unequal discussions or there was prejudice, in exactly the same way it would be if you were defending the original award and it was the protest against the award to Raytheon? I mean, it's been our position all along that ultimately Raytheon has the burden of demonstrating its case, and the agency has, the Court should be looking at whether the agency's corrective action was rational. Does that depend on our concluding that there was an error? It doesn't necessarily require an error because it's rationality. Rationality can be different from an error. In this case, the agency does have an error, and obviously it is hard to imagine a case where there is an error and it would not be rational for the government to fix it. While Raytheon tends to defend the government... ...we committed an error and it is absolutely clear it had no effect on the bidding process. That might in fact be irrational to say we're going to do it over again. Well, the government also has an interest in the integrity of the procurement process. The government interest is different from private parties entering into contracts. I mean, if we make an error and we view that error as significant, yes, obviously it would be... But even if it's not... This is limited time, so... Do I have to decide that the government is now correct that there was an error, or is it enough for me to decide that it was a rational interpretation of the set of regulations and of the sequence of events that there was an error? Do I have to decide that there was prejudice or that it is a reasonable thing for the government to do in these circumstances to say there was enough of a chance of a difference in outcome that you can go ahead, even if the government was saying the opposite, the government would win in court? No, the government only needs to have a rational basis to take its action, to take corrective action in a case like this. So it is enough that the government had a rational basis to conclude that there was a need for corrective action here. Well, how would there be a rational basis if there wasn't an error? Put aside the question of prejudice. I mean, if the government says, this was an error, and we say, no, it wasn't an error, how can the government's action be rational if it's based on that mistake of law? If it's based upon a misstatement. Well, that's a fair point, Your Honour. But at the end of the day, it is still whether the agency rationally determined there was an error, not whether or not there was necessarily an error. So you can go through a rational process and reach the wrong conclusion. You don't want to reach that process. It is much harder to justify the rationality of your action when you're wrong. But you can still be rational. I find that a little troubling in a way because this whole procurement system is based on competitive bids and free and open competition. If somebody secures an award for the government to say, well, we're going to re-bid it because we might have made an error, it seems to me very troublesome. Well, because the government has reasonably concluded that it's made an error, not that we might have made an error. That's not reasonable. If it's not reasonable to rationalize ignorance of the law, it's very hard to say that there's a rational basis for not understanding the law. Don't you have to go farther in order to support a discretionary act that's at the edge of supporting? Well, and again, Your Honour, I don't feel this is anywhere near the edge. But it is harder to support something. The further you get away from being correct, the harder it is going to be to justify the agency's action. Obviously, if the agency is correct, it is very simple to say that the agency acted rationally because we're right. When an agency is right, it is hard to say the agency was irrational. Maybe not impossible, but ultimately very difficult to say the agency is acting irrationally. On the other hand, when the agency is actually incorrect, it is difficult. I have to acknowledge it's very difficult to say that the agency ultimately is acting rationally. But that would all depend on the facts of the case, ultimately. I don't think that this case is anywhere near as far afield as that. If all that's necessary is showing that there might have been an error or was reasonable to think there might have been an error, it seems to me it opens up all sorts of opportunities for manipulation of the bidding process by the government, saying, well, we don't like what happened, so we want to, even though we ordinarily would be stuck with it, we want to reopen this, and here, let's see if we can find some possible error in the procurement process, something that would be reasonably seen as a possible error so that we can reopen the thing. I find that troubling. Don't you find that troubling? Well, I suppose if you're starting with the presumption of good faith, I don't find it troubling, because I don't believe the government would do that. I believe there are restrictions on the government's ability to actually simply reopen a competition, similar to those that would be to the government's restrictions to terminate a contract for the convenience of the government. You can't terminate in bad faith. You can't terminate for the convenience of the government simply because you want to find a better price. For example, the government found that Raytheon had a price, but we felt we could get a lower price from Raytheon if we reopened the competition. We could not terminate them for convenience, and we certainly would not consider rational agency action to be able to do that. I think that if we're going with the presumption of good faith, and there's no evidence of bad faith there, I think that we're fine. It concerns me less beginning with the presumption of good faith and starting from that understanding. I would agree that if the agency is actually deliberately taking action, and if there's evidence in the record that the agency is effectively manipulating the process, then that would not be justifiable. Any more questions? Can I ask you the same question that I asked at the end of Mr. Colley's argument? Suppose that you are right about the disparate information issue so that the re-bidding is permissible. Do we need to decide the second question, the one about whether there was a deficiency in substantiation or the resulting evaluation? I don't believe so given a number of factors that I cannot discuss at this time in open court. I'd be happy to address that in a subsequent filing if the court would like, but I do believe the answer to that question depends on getting into details of the current procurement that I cannot get into at this time. Without the details, is the answer yes or no that we have to reach the second question? The answer would be no, you don't need to reach the second question, but I would have to get into further detail about that to explain. I respectfully apologize for that, Your Honor. Any more questions for the government? No questions for the government? Okay, thank you, Mr. Mager. Ms. Madsen, you've asked for one minute. Are you going to talk fast? Yes, Your Honor, I will try to talk fast. Thank you for the minute. Mr. Colley suggested with respect to the subject of substantiation that Your Honors asked him about that it was permissible under the RFP for the evaluators to rely on data that predated the change, the Raytheon proposal, and we respectfully submit that that answer is wrong and that issue is directly answered by the RFP in section L.5.3.1.3. What page is it? It's page A358 of the Joint Appendix, which is specific that all- I'm sorry, where on that page am I looking at? It's section L.5.3.1.3. Right at the bottom? Yes. Okay. And that provision says that all CTEs that changed had to be identified, and then it required that the offeror provide the current TRL, a technology readiness level, of the CTE in its proposal, the source of the rating, and full substantiation and supporting data of the TRL of each changed CTE. Let me just try to test this a little bit. It might be a ridiculous hypothetical, but suppose in the first phase they said, this thing is painted red, and then this thing is painted red, and then the next- they said, we've made a change. It's painted green now. And they say, this doesn't change anything, and the evaluator said, right, this doesn't change anything. So their substantiation was, look at what we said before. We addressed everything that mattered before. No further testing is necessary. Your Honor, our position is that, and that may be a somewhat absurd hypothetical, but that the RFP, the agency decided for its own reasons that they deprived the evaluators of that discretion. It doesn't say de minimis. It doesn't say minor. It doesn't say immaterial. It says all changes have to be supported with substantiation to a TRL 6 level. But why can't the experts say the earlier substantiation is substantiation for this, when the change makes no difference? They might be right or wrong about that, but that would be an argument about the specifics of whether they're right or wrong, but not about the idea that substantiation requires new testing always. Again, I think it's our view, and I think this is the low court below agreed or the GAO agreed, that for whatever reasons the agency has, which we believe are to support without question the technical maturity of the TR module, which is the basic building block of the radar, that the offeror had to provide the current TRL and full substantiation in supporting data of each change. Even for minor changes? It doesn't say minor. It doesn't say de minimis. It says each. And I can explain what I think the rationale is, if you're interested. This program had been through two levels of technology development. The module here, the transmit-receive module, not its pieces, the module as an integrated circuit, is the basic building block for this radar. It uses new technology that is higher power, and the little device we're talking about here, the circulator, controls the outflow of power and the receipt of the signal. If it doesn't function properly, the microwave device, if it doesn't function properly, the radar can't do its job of detecting small things at long distances. So the agency made the decision that it would constrain changes. They thought the development had been demonstrated at Demonstration C, that the design had been validated at the preliminary design review, and the solicitation is unambiguous. It says you have to validate the current TRL with full substantiation for each change. And I know government counsel cited the Section M provision as well, 2.4.1.3, which is the JA-396, that substantiation is required for all CTEs of change. The solicitation in two places says all. It says in Section L, the current TRL. And we know that that TRL-6 requires testing. So it doesn't leave room for the evaluators to make discretionary decisions about that's good enough. Let me ask you one last question before you sit down. Do you agree that the government can order a rebid without finding an error? I'm sorry, Your Honor, I didn't hear you. Do you agree with the government that the government can order a rebid of the contract, even if it doesn't find an error in the award, just because it rationally thinks there could have been an error? Are you talking about a legal error or a factual error? An error that's a violation of the solicitation or a legal error, something that would invalidate the award. Your Honor, I think the way the rational test is applied is the government has a reasonable cause to believe that its procurement has been compromised, that its competition has been compromised, and that it did not get the best value that it intended to get, that it has the discretion to take corrective action, even if it has not found an exact legal error. And is there any authority for that? I believe that there is, Your Honor. I think there – I mean, could I cite it to you off the top of my head at the moment? Well, you're going to have the opportunity to supplement and put that in there. I understand. I'd be happy to do that. Okay. Okay, any more questions for Ms. Madsen? Thank you. Thank you. Okay, Mr. Schauble. Thank you, Your Honor. Did you get the same answer on the error point? Can they re-bid without finding an error? I think the answer is yes. They have wide but not infinite latitude. And so that does give courts like this a standard by which to measure that. In this instance, the record was sufficient. And in response to your question, what would have happened had there been no GAO protest? How do you analyze that situation? In this instance, the record as it developed was sufficiently questionable that it seems perfectly reasonable for the agency to say something so fundamental as different instructions about a critical issue leads us to feel that it's a rational decision to institute corrective action. And that seems perfectly within the latitude that the agency would have in a circumstance like this. The facts in the case... Has this sort of thing ever happened before that the government says, well, we don't think it was an error, but we think that it would be a good thing to re-bid the contract? Well, the short answer is I don't know, but I don't think the government is saying there's no error. I think the government here acknowledged that there were material unequal treatment of bidders. And as a consequence... They are arguing that there was an error, but they're also saying even if it wasn't an error, we still have discretion to re-bid. Even if there's no particular finding that there was all of the requirements had there been a GAO decision that there was an error, that's not the Air Force's task and it's not their expertise. I think they look at the record and they say there's enough here that we need to re-do this. Not only in this procurement, but there's a procurement integrity writ large issue here about a significant disparity in how the offers were treated. And under those circumstances, it's hard to argue that it was not a rational decision to say we're going to step back and make this right. The issue that we're talking about is an instruction to the offers about evaluation criteria and price realism. And it was so fundamental to this procurement that when you look at the results, and this is something that we would submit in our post-argument paper, when you look at the results, it's clear that the people who got one instruction acted one way and the people who got a different instruction acted a different way. And that differential is dispositive. And under those circumstances, whether there's a particular finding of all of the necessity that there was an error, I'm just saying, was what they did in violation of the FAR? Absolutely. And I know your position is yes, it did. But suppose we were to conclude, well, no, actually that didn't violate the FAR, but the government could still re-bid because it was rational for them to think that way. But with all due respect here, I think you're sort of assuming the answer. If it wasn't a violation of the FAR and it was a minuscule error, an administrative error... Those are two ends of the spectrum. It could be that it seems to the government that it was unfair even though it wasn't a violation of the FAR and therefore we are re-bidding. I'm a little surprised, frankly, that your client would want contracts re-bid in the absence of an error. Well, you're asking me, though, in the spectrum of a rational basis and an infinite basis that the Air Force has to make a decision to take corrective action. Yes, there's a spectrum there. And I think we know when we see it. When we see something that is rationally based, it seems obvious and this seems obvious. When we see something that is infinite and all the way at the other end of the spectrum, maybe it will be obvious. But I don't think there would be a requirement that there be the kind of sort of black and white finding before the Air Force could rationally say, we want to take corrective action here. My time is limited. I'm sure it's not. The point I wanted to make, there's no ambiguity and it wasn't really a mistake in the instruction that Northrop received. It was an evaluation criteria. And the record suggests that at some point later, the Air Force, and this is their words, changed its mind about how the evaluation criteria would be applied. But only one person was not informed of that change of mind. And under those circumstances, it seems to me very difficult to say that the corrective action wasn't reasonable. This isn't a mistake of law. This is the Air Force saying our evaluation criteria is going to be X. That can be more restrictive than what the law applies. That can be a particular application of price realism in this particular procurement. But when Northrop received that instruction, it understood that to be an evaluation criteria. The fact that that evaluation criteria was 100% consistent with other indications from the same agency. I don't think it's disputed that it was a mistake of law. A misunderstanding, not current, the FAR hadn't been updated. Don't we have to accept a different, more permissive theory that even if it was a mistake of law, it was, if not irrational, it was not unreasonable? Let me answer that in two ways, Your Honor. First, whatever the law is in this circumstance, the government, the Air Force, has the ability to impose an evaluation criteria on price realism that is more restrictive than what the law would allow. And keep in mind, this is an instruction to be sure that that's true. Well, I would be happy to submit on that issue, Your Honor. But in this instance, the Air Force said, we're going to evaluate your proposal under this approach. We feel that it was perfectly acceptable for the Air Force to, with all due respect, have a somewhat more restrictive view. The Air Force did not say, we are making a decision about the allowability, ultimately, of these kinds of costs. They're saying, in this instance, our price realism analysis is going to have these criteria. That statement to Northrop was 100% consistent with the Defense Contract Audit Agency's manual about how, in fact, IR&D costs are to be treated. So, I'm sorry, just to locate this in the argument. This is all a way of your saying that the premise of Raytheon, namely, that this was a plainly erroneous legal position, the original Air Force position, and that you are attributed, legally, constructively, the knowledge that it was plainly erroneous. You're saying, no, that's not right. It was actually a believable position. Yes. We're saying not only was it a believable position because the other parts of the Department of Defense had, in fact, endorsed that position in their own publications. The issue about the allowability of IR&D and what circumstances it's allowable and how it should be treated is one that is subject to a fair amount of conversation, dispute, nuance, and subtlety. And you could find, as many lawyers are sitting in this room, different understandings of precisely how it's to be treated. How do we understand our THIACOL decisions as set? I thought that was pretty clear that it set a standard for how to treat these research and development costs, which was inconsistent with what the evaluation letters said here. Let me just give you an example about how some lawyers could distinguish that case. The THIACOL case is a production contract. This is a development contract. Do the same rules about independent research and development apply in a production setting as in a development setting?  The issue here was not an argument about what the ATK THIACOL case means and the different interpretations. The issue here is the Air Force said, here's what we want you to conform your proposal to. And let's assume for a moment, just for the argument's sake, let's assume that the Air Force was wrong when they gave us those instructions. Once the Air Force said, my golly, we now have spoken to four or five other people and we're changing our mind about how we want these costs to be treated, there was a requirement in the far end from the idea of pure fairness to tell all of the offerors. And the fact that one offeror was not told is amply played out in the consequences and in the way each of the offerors treated those costs in their proposals. And under those circumstances, whatever you call the argument about the application of the rules of how IR&D should be treated, whatever you call that, not to tell one person that you are changing your exact specific instructions to them for which there's a great deal of support in the world, that seems to me the definition of unequal treatment. This question might not be one that you can answer, but you referred to the extended discussions between offeror and the government. And there's an argument that in the context of the extended discussions, it might well have been quite reasonable and correct for in discussions with your client for the government not to talk to you about the IR&D and its changed position about how those kind of costs might be accounted for under this contract or shared between contracts because it wasn't really relevant to you. Well, the answer to that question I would like to address in my post-argument submission because I think when you look at the actions of the other offerors, it does amply demonstrate that without that impediment of the Air Force's instruction, the actions of the other offerors are different. And I think without getting into the details, I think it's quite clear from the record entirely that Northrop would have acted differently and would have analyzed the pricing strategy differently had the Air Force said, oh, by the way, those instructions, we are changing our mind and giving you these instructions. And we've identified both in our briefing and the Court of Claims also found in citing those issues that this is an issue on which Northrop has expanded itself in a number of other procurements. There were commonality with other programs for which Northrop could have found the common IR&D funds to apply. And so, in a circumstance where we're told X, I think having done dozens of other procurements in which we've applied all kinds of different applications and bidding strategies based on the instructions and the evaluation criteria that we've received from our customers, we respond to what's available and what's allowable. And I don't think there's any doubt that from this record, those instructions had a material effect on our decisions. And as you can see from the submission that we'll provide on the activities and bidding strategies of the others. Okay. Thank you, Mr. Sauer. Okay. Mr. Colley, you have enough time to tell us what we need to know in rebuttal. Thank you, Your Honor. Just to start with this last point about the discussions issue, I think it is very clear to understand what Northrop was told in that EN statement. It was a very specific message that said how indirect costs or how IR&D would be treated, whether it was implicit or explicitly required. The ATK-Thiokol decision is not ambiguous on this point. The statement in the EN was flatly contrary to that statement. So, what Northrop was presented with was an EN that said in accordance with the FAR, we will not follow the FAR. In the same context where the RFP had said we will follow the FAR with regard to IR&D. I don't think this Court should walk away from the rulings of Statistica and Blue and Gold and other cases without taking clear recognition of what that communicated to Northrop Grumman. It got it in an EN statement. There was no RFP amendment. There was no way for Northrop to know that any other offeror had heard this same communication. It was amazing to have Northrop simply rely on that and say, okay, we will bid in accordance with this flatly ambiguous statement and go forward on that basis without raising any question. The Statistica principle is that when an offeror sees that kind of ambiguity, the system benefits efficiently from having those kinds of questions raised in a timely way so they can be resolved without complication and not wait until the end of the procurement after everything is all over with. In this case, Northrop brought its protest anyway. Northrop did sue. Northrop did bring a protest, and it shouldn't have been allowed to bring that argument forward because it had not lived up to its obligation to work the system the way this Court has instructed it should be worked. These kinds of ambiguities are raised at the time and clarified so the system isn't jammed up the way it has been in this case. The other idea that Northrop... Can you address the question of whether the government has the authority to re-bid without finding an actual error in the first award? Your Honor, I believe the citation is to 10 U.S.C. 2305F. The head of the agency may determine that the solicitation award does not comply with the requirements of law or regulation. That's when the agency is allowed to take corrective action. So, no, there needs to be an error. And in this case, the agency concluded that it had not made an error and defended against the charge that it had made an error. The only question that's before this Court is the one that this Court identified in Turner. Did the GAO's direction to the agency supply the agency with a rational basis for taking corrective action? There has been no agency decision here. There has been no agency finding that we made a mistake and we've got to go out and fix it. The agency's only decision that's in the record is, we didn't make a mistake, we're defending this decision that we made before the GAO. When GAO said, no, we disagree, we're going to sustain these protests, the agency said, on that basis exclusively, that was the finding of the Court below, we're going to take corrective action. The question before this Court, as it was before the Court of Federal Claims, is, did that GAO statement provide a rational basis for the agency to act? Not whether or not we can create some other theoretical basis, or, gee, if I was sitting in the agency's shoes at the time, or what if the agency thought this, or certainly the agency might have thought that. There's nothing in the record about any kind of agency assessment along that point. And it's not for this Court to come up with new reasons, any more than it was for the Court below, for the agency to have come to a different result. The question is whether the agency acted on a rational basis. The only basis they acted on was the GAO decision. Our position is that the GAO decision was not one that should have provided that basis, because Northrop should have raised the question on its own, and because there had never been any showing that whatever the problem you might say the agency engaged in through its discussions did not prejudice Northrop. It is true, isn't it, that the GAO didn't address the question of prejudice? The GAO made one statement during the outcome prediction that says, we didn't hear Northrop disclaim any reliance on IR&D. That's not the prejudice standard. The GAO never articulated any finding of prejudice that aligns with any test of prejudice that has ever been announced in any decision we can find. GAO did not find that but for the mistake in the discussions, there was a substantial chance that Northrop might have won the award, could have come up with enough IR&D. If the rationality of the government's decision is based on the GAO award, then prejudice, finding of prejudice, is not part of the government's decision, right? That's correct, Your Honor. There hasn't been any finding of prejudice by anybody. The GAO didn't make a finding of prejudice. The Court of Federal Claims undertook it upon itself, which it shouldn't have done, to try to articulate what it thought the GAO may have surmised about prejudice, based on the kind of claims you've heard today from counsel. What you want us to do is to say you can't reopen without finding of prejudice. And what case says that that's true? I think the cases that this Court has ruled on in JWK, LeBlanc Foods, this Court has held regularly that a protest finding of sustained requires a finding of prejudice. The only basis on which the agency acted was a statement that there's going to be a protest sustained. If it didn't have that second component, that essential component of prejudice, that protest sustained statement doesn't have a rational basis to it. Without a prejudice finding, you can't have a protest sustained. That's this Court's ruling, and it was applied, and that's GAO's standard. And GAO never said there was prejudice. There has never been any finding of prejudice. Frankly, there isn't any evidence of prejudice. We'll talk about this in our submission, too. This is a different point. I don't have it in front of me, but just remembering what you read from 10 U.S.C. 2305F, that doesn't require prejudice for the agency to correct its decision. It only requires the agency to determine that the award was not in compliance with whatever. Prejudice is probably a term of art that's used in the protest realm that may not have found its way into the statute, Your Honor. But I submit that someone would have a pretty good case against the government if it blew up a procurement because it found a mistake that didn't matter to anybody. There was a hypothetical. Is there any case law about that, interpreting that provision of the statute? I don't know, Your Honor. But certainly there is plenty of case law that the government can't act in an arbitrary and capricious fashion. If they've created a procurement and made an award and had offers go through millions of dollars of effort and expense and expose their prices and do all the things that are involved and then to upset it because they find a de minimis error. This Court has said that you don't sustain protests for de minimis errors. I don't know why that rule shouldn't be applied if the agency is acting on its own. That's just a rational sort of judgment. I don't have a case that I can cite for you, Your Honor. But it seems to me that if you are acting on a basis that isn't triggered by some compelling reason, even if you found a de minimis mistake, why would you do that? Why wouldn't this Court find that to be arbitrary and capricious? Let me just talk about for a moment also the issue of the agency having changed its mind. The agency did not change its mind. That is very clear. What the agency did is come to a better understanding of the existence of the ATK-Thiokol decision and that it had made a mistake. The question then before the agency was, now what do we do? Now what do we do with Northrop? Raytheon did the right thing. It came forward and asked the question. Northrop did not. The agency had a judgment call to make. In the FAR, when it talks about discussions, the only regulation that keeps getting waved around here is the one that says treat anybody more favorably than the other. The regulations also direct the agency to tailor their discussions in a way that don't unnecessarily reveal information about price and technical proposals. The agency had a judgment to make. That judgment about how to tailor those discussions is entitled to deference. Let me just ask. I keep thinking about exactly that. Namely, there are two regulations in play. There's no self-evident, non-discretionary way of figuring out how the combination of those two regulations apply in a particular circumstance. And therefore, there is a range of reasonable judgments about whether there is error. It's not there was error, there was no error. There's a range of reasonable judgments. I would agree with you, Your Honor. And the agency has also raised reasonable judgments about how the agency could decide to go forward with its discussions. And that's why I think that the better course, rather than trying to get into that debate in this case, is to apply the straightforward rule of Statistica, say this issue didn't even need to come into play. If Northrop had done what it was supposed to have done, we wouldn't be here. The agency wouldn't have been forced into that judgment. If that rule applies, there was no basis for a protest, and there was no problem with this procurement. Let me make just one comment about the TRL level. Ms. Madsen comes up to you and quotes the language from the RFP, but completely misrepresents it. The language of the RFP does not say that you have to come in and substantiate your changes. What it says, and that's a very important difference, what it says is you have to come in and substantiate the TRL of any system that has been changed. The green to red example is a terrific hypothetical. If the TRL had already been established for the system, and it was, the entire system, not parts, the entire system was tested and proven and demonstrated as mature in the pre-EMD phase. In the post-EMD phase, Raytheon put forward as its representation of maturity for that system the same assessment and testing that had been done before. It said, you know, the change we made here is so innocuous, the maturity of this technology is not affected. It's like the red to green. We don't need it. So we're going to prove the current TRL of this system based on the prior testing that was done. It's still valid. And you know what? The evaluators agreed with that and said it's perfectly mature. It's still fine. We don't need any new testing. The RFP didn't require anything more, and the evaluators got it right. And that's what the Court of Federal Claims recognized below. Thank you. Any more questions? Any more questions? Thank you, Your Honor. Thank you. We will take the case under submission now. Judge Dyack, what do you think? Will we receive submissions from anyone who wishes to write to us? And what do we say, 10 days from now? I think 10 days and 10 pages, if you can limit it, from any party intervener who wishes to tell us something that we need to know that we haven't covered. Anything else we need to cover? Good. All right. The case is under submission. All rise. Your Honor, the court is adjourned until tomorrow morning at 10 a.m.